THE PEOPLE OF PUERTO RICO, Appellant *v.* REGISTRAR OF PROPERTY OF BAYAMÓN, Respondent.

No. 1251. Submitted May 2, 1949.—Decided July 11, 1949.

244

*Vicente Géigel Polanco, Attorney General,* and *Carlos J. Faure, Assistant Attorney General,* for appellant.  The Registrar appeared by brief.

MR. CHIEF JUSTICE DE JESÚS delivered the opinion of the Court.

An order rendered by the Court of Eminent Domain, in the case of The People of Puerto Rico against Pascasio Cancel y Ramón Fuentes, was presented in the Registry of Property for recordation.  It was decreed in this order that within thirty days from its notification, said defendants or in their absence, the person or persons in charge of the property described in the order, make material delivery of said estate to The People of.Puerto Rico.  It was also decreed by virtue of said order, that title in fee simple be vested on the expropriator.  The condemned parcel was described in the order. It was stated that it was segregated from the main property

recorded at folio 111, of volume 11 of Guaynabo, estate number 525, first record, but the main property, as it remained after the segregation, was not described.

The Registrar recorded the order with the curable defects that it was not final and that the remainder of the main property was not described. The People of Puerto Rico filed this administrative appeal from this ruling.

■ Section 3 of the Mortgage Law expressly provides that in order for the titles mentioned in § 2 thereof,[1] to be recordable, they must appear in a public instrument, final judgment *or authentic document issued by a judicial authority* or by the Government or its agents, in the form prescribed by the regulations.

Commenting the same Section of the Spanish Mortgage Law of December 16, 1909, Morell says:

"But not only may the judgments, whether referring to real estate or to a declaration of legal incapacity be recorded by virtue of judicial testimony, or serve as a basis to some recordable entry in the Registry, but also *the records* and even mere pronouncements." Morell, *Legislación Hipotecaria*, vol. 1 (1916 ed.) p. 578. (Italics ours).

■ And if we examine § 5(*a*) of the Act providing for condemnation proceedings, as amended by Act No. 22 of April 9, 1942 (p. 386) we shall find that the title in fee simple to said condemned property or any minor right or interest therein, is vested in The People of Puerto Rico or in the plaintiff and such property shall be deemed to be condemned and acquired for the use of The People of Puerto Rico, of the corresponding Housing Authority, of the municipality in question or of the Government of the Capital, as the case may

---

[1] Art. 2 of the Mortgage Law, in its first part, provides:

"Art. 2.—The following shall be recorded in the registries mentioned in the preceding article:

"First. Deeds conveying or declaring the ownership of real property or of property rights therein.

"                                                          ."

be, as soon as said declaration of taking and delivery is filed [2] and the deposit made in the court of the amount estimated as compensation and specified in said declaration for the benefit and use of the natural or juridical person or persons entitled thereto.

And in the proviso at the end of said § 5 (a), it is stated that "no appeal in any such cause nor any bond or undertaking given therein shall operate to prevent or delay the acquisition by, or the vesting of the title to such property in, The People of Puerto Rico, the corresponding housing authority, municipality, or Government of the Capital, as the case may be. . ."

■■ These provisions leave no room for doubt that the order of the court decreeing the vesting of the title and delivery of the condemned object does not confer ownership title to the expropriator, but rather the filing of the declaration of taking and delivery, subject, of course, to the conditions mentioned in footnote 2, *supra*. Therefore, when a copy of the declaration of taking, contained in the order of the Court of Eminent Domain certified by the judicial authority, is presented to the Registry, and also after establishing the other particulars which we mentioned in footnote 2, the Registrar is bound to record the ownership title of the property described in the declaration of taking and delivery, because it is the "authentic document issued by a judicial authority" contemplated by § 3 of the Mortgage Law.

Since it is not a final decree, the curable defect entered by the Registrar for failure to state that the alleged order

---

[2] In accordance with § 5 (a):

"Said declaration of taking and material delivery shall contain and be accompanied by: (1) a statement of the authority under which, and the public use for which, the acquisition of said property is sought; (2) a description of the property sufficient for the identification thereof; (3) a statement of the estate or interest in said property the acquisition of which is sought for public use; (4) a plan, in the case of property which can be so represented; (5) the fixing of the sum of money estimated by said acquiring authority to be just compensation for the property the acquisition of which is sought."

was final, does not lie. Since it is an authentic document issued by the judicial authority, consisting of part of the record of the condemnation case, the same is recordable under § 3 of the Mortgage Law.

■ The other defect assigned in the ruling does not lie either. It is a well-settled doctrine that in condemnation cases, the expropriator acquires a new title which is not derived from the former owner of the property. *Duckett & Co.* v. *United States*, 266 U. S. 149 (1924); *Emery* v. *Boston Terminal Co.*, 59 N. E. 763 (Mass. 1901) and *P. R. Aqueduct Service* v. *Registrar, ante*, p. 216. Since the title does not flow from the former owner of the condemned property, we must conclude that appellant is not bound to comply with the provisions of the Mortgage Law which require the description of the main property, as it remained after the segregation.

For the reasons stated the ruling of the registrar will be reversed and the Registrar ordered to cancel the curable defects assigned by him.